(C. D. 235)

BRAUN CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 16, 1939)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plantiff.

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of Los Angeles, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of brass drums within the base of which are installed clockwork mechanisms which rotate the drums at adjustable rates of speed. Duty was levied thereon at the rate of $4.50 each and 65 per centum ad valorem under paragraph 368 (a) of the Tariff Act of 1930 which reads as follows:

Par. 368. (a) Clocks, clock movements, including lever movements, clockwork mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, synchronous and subsynchronous motors of less than one-fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachments, and any mechanism, device, or instrument intended or suitable for measuring time, distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording or indicating time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

(1) If valued at not more than $1.10 each, 55 cents each; valued at more than $1.10 but not more than $2.25 each, $1 each; valued at more than $2.25 but not more than $5 each, $1.50 each; valued at more than $5 but not more than $10 each, $3 each; valued at more than $10 each, $4.50 each;

(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

(3) any of the foregoing containing jewels shall be subject to an additional cumulative duty of 25 cents for each such jewel.

It is claimed that said articles are properly dutiable at but 40 per centum ad valorem under paragraph 360 of said act as scientific instruments.

A rough sketch of the mechanism in question was admitted in evidence as Illustrative Exhibit A. The plaintiff also introduced in evidence the oral testimony of two witnesses. The first, B. S. Phoenix, purchasing agent of the plaintiff-corporation, testified that the said articles consisted of cylindrical drums mounted on small bases; that they were operated by clockwork mechanisms; and that they were delivered to the California Institute of Technology.

The second witness, Jeffrey Keighley, research assistant in the department of biology of the California Institute of Technology, testified that, while he did some teaching, most of his time was spent in research work. The witness then indicated by marking the letter "A" on said Illustrative Exhibit A, the location of the revolving drum, and by the letter "B" the location of the base containing the clock-

work mechanism. As to the operation and use of the mechanism the witness testified as follows:

Essentially what one does is this: A piece of smooth paper is fastened to the drum, and then the drum with the paper on it is held in a smoky flame, putting a layer of carbon all over the smooth paper. Then instruments of one sort or another are placed in such a position that when these recording instruments move the markers on them make a white line through the soot which is on the paper drum. At the same time, the drum is usually revolving; one gets then a record of whatever changes the recording apparatus is recording with reference to time. When all that is done, the paper is removed and dipped in shellac and dried, and the shellac is in order to preserve the record in order that the soot will not be rubbed off, and it is, as you can see, a piece of apparatus which can be used in a great many ways. The records may be pneumatically, electrically, or mechanically driven.

Q. You just said it was used in connection with instruments of one sort or another. Tell us what type of instruments you mean by that, that is, briefly describe them.—A. Well, sometimes one wants to know when a certain electrical impulse is given to some other portion of the experimental set-up, and in that case somewhere in that electrical circuit we would have a small magnet which operates a very light lever, which operates on, writes on the drum. We may also have a tuning fork or something of that sort which puts a time mark on.

Q. In what type of experiments have you actually used or seen this article used?—A. Well, all our experiments are physiological experiments.

Q. By that would you please explain it a little more, what you mean? — A. Well, biological experiments. We work with living animals, or we work a lot with muscles which are taken from frogs or crayfish, and we are interested in trying to find out how these muscles work.

Q. And you use the merchandise that you are referring to for the purpose of recording any changes that may occur, say, in the muscles in the time the drum is revolving?—A. Yes; for instance, when a muscle contracts we might have it connected to a lever in such a way that as it contracts it makes a mark on the drum.

Q. Is that the only use you know of the article you are referring to?—A. Yes.

On cross-examination he testified in part as follows:

By Mr. McGrath:

X Q. Professor, you stated that device has a variety of uses; is that correct?—A. Did I say exactly that?

X Q. I assumed you did.—A. I meant that it may be used in a variety of different experimental set-ups.

X Q. Is there anything about this instrument that precludes it from being used other than in some university or schools of learning?—

\* \* \* \* \* \* \*

A. No.

\* \* \* \* \* \* \*

By Judge Brown:

Q. When it is so used it is only used for the same purposes?—A. That is right; yes, Your Honor.

By Mr. McGrath:

X Q. Is there any use other than the use about which you have testified that you know for this device?—A. It is a recording device which might be used— we use it for physiological experiments. I don't know offhand any type of

experiment, or anyone on the Institute campus with whom I am familiar who uses such as apparatus for anything else.

X Q. Could it be used in the industrial plants of this country for purposes other than you have indicated?

\*  \*  .  \*  \*  \*  \*  \*

The WITNESS: It would be used for similar experiments in any place.

At the close of the hearing it was stipulated by and between counsel for the respective parties in open court that the merchandise at bar was composed wholly or in chief value of metal and was not plated with gold, silver, or platinum.

From this record it is evident that the imported articles are scientific instruments, since they are used solely in experimental research work whether in institutions of learning or elsewhere. They are therefore scientific instruments within the meaning of paragraph 360 of the Tariff Act of 1930. *W. L. Conover* v. *United States,* 17 C. C. P. A. 324, T. D. 43743.

The evidence also shows that said articles are operated by revolving drums which in turn are operated by a clockwork mechanism, both of which are integral parts of the mechanism itself, bringing the latter within the scope of paragraph 368 of said act. The sole question, therefore, is as to which of the two paragraphs contains the more specific provision. That issue was definitely determined by the United States Court of Customs and Patent Appeals in the case of *United States* v. *C. H. Stoelting Co.,* 21 C. C. P. A. 588, T. D. 46995. In that case the appellate court had before it certain chronoscopes containing clockwork mechanisms adjusted to record the lapse of time, and used in connection with other apparatus in research work in laboratories of universities and other institutions in measuring the time of reaction of human beings while subjected to certain experimental tests. In holding that although the chronoscopes in question were within the scope both of paragraphs 360 and 368, the court said:

It is well known that many very delicate scientific instruments are provided with clockwork mechanisms of various kinds. This is particularly true of astronomical instruments of very great delicacy and of great value, designed for the purpose of measuring the distance of the stars and planets from the earth. We do not think that Congress intended that all such instruments, used only in pure science, should be classified under said paragraph 368, but did intend that they should be classified under paragraph 360, unless more specifically provided for elsewhere.

*It is our conclusion that Congress did not intend to include within the provisions of paragraph 368 any article or device which is used only in pure science.* [Italics ours.]

Therefore, following that decision we hold that the articles in question are properly dutiable at the rate of 40 per centum ad valorem under said paragraph 360 as scientific instruments, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.